**EASTERN AIR LINES, INC., Appellant,**

v.

**AMERICAN CYANAMID COMPANY**
and Insurance Company of North
America, Appellees.

No. 19742.

United States Court of Appeals
Fifth Circuit.

Aug. 8, 1963.

Rehearing Denied Oct. 9, 1963.

A. R. Christovich, Jr., Christovich & Kearney, New Orleans, La., for appellant.

Harry B. Kelleher, Carl J. Schumacher, Jr., Lemle & Kelleher, New Orleans, La., for appellees.

Before HUTCHESON, WISDOM and GEWIN, Circuit Judges.

WISDOM, Circuit Judge.

This lawsuit arises out of the crash of an Eastern Air Lines Douglas DC-7 passenger plane at Moisant Airport, New Orleans, Louisiana.

In the early hours of the morning of January 15, 1959, Eastern Air Lines Flight 545 was coming into Moisant Airport for a landing. The weather in the New Orleans area was marginal—foggy, but within the minimum atmospheric conditions the Federal Aeronautical Association approves for a landing. Earlier in the night there had been reports of smog and smoke on the airfield, and a Delta flight, just before Eastern's flight, had been warned that smoke from American Cyanamid's chemical plant across the Mississippi River from the airport was obscuring part of the runway. The pilots were unaware of the possible presence of thick smoke, but planned an "IFR" (Instrument Flight Rules) approach to the East-West runway because of the fog and low ceiling. There was a

ceiling of 200 feet and ground visibility for a half-mile. The control tower gave clearance to land. The plane was making its final descent and had crossed the end of the runway when visibility suddenly ceased. As the pilot testified: "It was something similar to pulling a shade on a window. You had visibility and then, the next second, you had none at all. We just lost complete contact with the runway. * * * I can't remember seeing the [runway] lights. If I saw them at all, it was nothing other than a blur." The plane dropped a few feet to the ground, bounced, flew for a few feet, hit the ground a second time, made a belly landing, and skidded the width of the airport, stopping just short of a canal. The passengers and crew suffered minor injuries. The plane was damaged to the extent of $376,202.30.

Eastern Air Lines sued the American Cyanamid Company, basing its action on both nuisance and negligence. American Cyanamid owns and operates a large chemical manufacturing plant situated directly across the Mississippi River from the airport. The complaint alleges that smoke and haze and smog caused by operation of the plant were hazardous to aircraft using Moisant Airport. In answer to certain special interrogatories, the jury found that (1) "the incident in suit [was not] caused by the operation of defendant's plant", (2) the "operation" of the plant did not "unreasonably interfere with Eastern's reasonable use of the airport", and (3) the "operation" of the plant was not "a proximate cause of the incident in suit". In answer to other interrogatories, the jury found that both American Cyanamid and Eastern were negligent, but that the negligence of neither party was a proximate cause of the accident in suit. The district court rendered judgment in favor of the defendants. Eastern appeals, specifying numerous errors of the trial judge. We affirm.

## I.

As to the nuisance claim, Eastern contends that the trial judge made the following prejudicial errors. (1) The special interrogatories did not ask the jury to determine whether a nuisance was present. (2) In view of a post-trial order in which the trial judge stated that "as a matter of law, the operation of defendant's plant constituted a nuisance", the plaintiff was entitled to a directed verdict or to a judgment N.O.V. (3) The trial judge erred in not explaining to the jury that nuisance does not depend on negligence; that the jury's determination of negligence should be separate and apart from its determination of nuisance. (4) Considering these specifications of error relating to nuisance and the jury's finding that American Cyanamid was negligent, the court should have granted a new trial.

We turn first to the interrogatories and the jury's answers:

"1. Was the incident in suit caused by the operation of defendant's plant? No.

"2. Considering all the circumstances of this case, did the operation of defendant's plant unreasonably interfere with Eastern's reasonable use of the airport? No.

"3. If so, was that operation a proximate cause of the incident in suit? No.

"4. Was American Cyanamid negligent? Yes.

"5. If so, was that negligence a proximate cause of the incident in suit? No.

"6. Was Eastern Airlines negligent? Yes.

"7. If so, was that negligence a proximate cause of the incident in suit? Yes."

We note that the word "nuisance" is conspicuously absent from the interrogatories. This omission supports Eastern's contentions, unless the Court should find, as indeed we do, that the trial judge's studied avoidance of the term was for a sound reason.

We turn next to a colloquy that took place between trial judge and counsel

December 8, 1961, when, after the close of all the evidence, the court denied the motion of each party for a directed verdict:

"THE COURT:

"I had in mind asking questions to the Jury similar to these: *Was American Cyanamid conducting a nuisance?* I might change the phraseology on that. If so, *was this nuisance the proximate cause of* the accident or incident in suit? It might be that you prefer that better. * * *

"MR. CHRISTOVICH, SR.:

"As I understand it on the question of nuisance and general negligence, there would be a differentiation in your charge to the Jury.

"THE COURT:

"Definitely. I don't want to mislead anybody. I haven't any particular opinion about this nuisance situation, and I am going to get the Jury to give us some answers, because, after all, I never cross a bridge till I come to it. That might relieve the necessity—I think the Jury will be in a position, if they find that there wasn't a nuisance, then it couldn't be negligence, and a differentiation could be made to the Jury." (Emphasis added)

These observations of the trial judge are not consistent with the omission of the word "nuisance" in the special interrogatories. American Cyanamid, however, points to a significant caveat at the end of the colloquy:

"There are some problems in connection with this nuisance business, and I am sure you have all read this very carefully, but I am not at all sure just what the facts of this case demonstrate with reference to nuisance, and what the applicable law is in connection with nuisance as it relates to the facts of this case. But I have in mind at the moment reading to the Jury Article 667 and 668 of the Civil Code, together with an ex-

planation about reasonableness and neighborliness, maybe."

The jury rendered its verdict December 10, 1961. Eastern promptly filed a "Motion for Judgment in accordance with motion for Directed Verdict, and in the alternative for new trial". January 10, 1962, the court denied this motion. In a minute entry the court stated the reason for the denial of the motion:

"Plaintiff's motion was predicated primarily on its argument that the Jury should have been asked to answer an interrogatory on the question of nuisance, particularly whether the operation of defendant's plant constituted a nuisance. *It was the court's opinion that, as a matter of law, the operation of defendant's plant constituted a nuisance because all of the evidence, including defendant's, showed that emissions from defendant's plant polluted the atmosphere in and around the property of others.* Consequently, in Interrogatory One the court merely asked the jury whether the incident in suit was proximately caused by the operation of defendant's plant." (Emphasis added)

■■■ If, as appellant urges, this statement of reasons had amounted to a holding, as a matter of law, that the case on nuisance was proved *as to Eastern*, the plaintiff would have been entitled to a directed verdict, a judgment N.O.V., or, at least, a new trial. We read the ruling differently. We take it to mean only that the trial judge ruled that the presence of a nuisance had been proved, in the sense that as to neighbors in the vicinity of American Cyanamid's plant the pollution of the atmosphere constituted a nuisance. It was proper therefore for the trial judge to withdraw from the jury the determination of whether there was a nuisance present. But still at issue for the jury to decide was the crucial question whether the smoke and other emissions were a nuisance *to Eastern.* Unsettled too was the question whether the nuisance caused the crash. These two questions overlap as

to cause. For the jury to find for Eastern it would have had to determine that the smoke and smog from the chemical plant *caused* an unreasonable interference with Eastern's reasonable use of the airport, and was therefore a nuisance to Eastern. The jury would also have to find that such interference on the night in question *caused* the crash. Considering the special verdict in this light, since there was no doubt in the trial judge's mind as to the existence of a nuisance, the two basic issues in the case were *cause* and *negligence*. "Cause" the trial court interpreted to the jury in terms of "nuisance". This simplified the issue by eliminating the jury's possible reliance on negligence as a constituent element of nuisance. Thus, the court instructed the jury:

"From listening to the questions, it is clear that there are two issues which are basic to this litigation. The first issue, as you must realize, is that of cause. What caused this incident?

"And the second, of course, is the issue of fault, the issue of negligence."

After charging the jury generally on these two issues, the court explained the special interrogatories one by one.

The first and third interrogatories require little discussion. The first asks the jury, "Was the incident in suit proximately caused by the operation of defendant's plant?" In instructing the jury on this question, the court gave the usual instructions on proximate cause. The third interrogatory paints the lily, but it could not have caused any prejudice to the appellant for the jury was not required to answer that question unless it answered "Yes" to the second interrogatory. The jury answered "No".

 The second interrogatory is the key to the case. *It asks the jury to determine if "the operation of the defendant's plant unreasonably interferes with Eastern's reasonable use of the airport."* This is a proper method of asking a jury of laymen to decide if the

operation of the plant constituted a nuisance *as to Eastern*. A court is not obliged to talk to the jury in legal technicalism. The word "nuisance" is not sacramental: the same idea may be communicated more clearly to a jury without the court's using any such term as "nuisance". "Nuisance" embraces mixed elements of law and fact, and use of the term might open the door to argument that the jury was being asked a question of law. So, at least, an able, experienced trial judge might think, and choose a safer course. Here, Judge J. Skelly Wright, an able and experienced trial judge, rejected the use of the word "nuisance" and instead phrased the interrogatory to require the jury to balance the reasonable operation of American Cyanamid's plant against Eastern's reasonable use of the airport: Was American Cyanamid's interference with Eastern unreasonable? This is the traditional balancing of interests required in the determination of a nuisance.

 The instructions dealing with the second interrogatory resolve all doubts as to the fairness or sufficiency of the special verdict. The trial judge read to the jury Articles 667 and 668 of the LSA–Civil Code, on which the state's modern law of nuisance rests, and to explain their application borrowed language from the leading Louisiana decision on nuisance. Then he put the case squarely in the jury's lap. These are the instructions:

"Now, this is Question Number 2: Considering all the circumstances of this case, did the operation of the Defendant's plant unreasonably interfere with Eastern's reasonable use of the airport? Now, this question, when it says 'Eastern's reasonable use,' you are not to infer that the use at this particular time was reasonable or unreasonable. It means to indicate a normal, reasonable use of an airport such as reasonable personnel would make of it under ordinary conditions, or under the conditions which you find in this suit. * * * ¶ Now, there are two

Articles in the Civil Code which are rather simple, so I will read them. Now, the interpretation is something else, but this is Number 667 of the Louisiana Civil Code: 'Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.' That is one Article. ¶ Now, the next one is 668: 'Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet everyone has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor." * * ¶ Now, the Supreme Court of Louisiana has given us a guide, and you cannot expect a mechanical guide— you cannot expect any Court to decide this case for you. This is the type of case in our system that is particularly suited to the genius of the Jury. It is a case that depends on reasonable or unreasonable action of human beings. The Jury is in the best position to make this determination. ¶ It is the universally accepted rule of law that *the owner of property has the right to conduct thereon any lawful business as long as the business is so conducted that it will not unreasonably inconvenience a neighbor in the reasonable enjoyment of his property. But every business, however lawful, must be conducted with due regard to the rights of others. And no one has a right to erect and maintain a nuisance to the injury of his neighbor, even in the pursuit of a lawful trade, to conduct business on his own land in such a way as will be injurious to those residing in the vicinity."* (Emphasis added)

It will be noted that the word "nuisance" does not occur in Articles 667 and 668. (It does not occur in French law or even in a French dictionary, though its origin in old French is obvious. See Lawson, A Common Lawyer Looks at the Civil Law, 145 (1953).

Articles 667 and 668 are found in the Chapter "Of Servitudes Imposed by Law" in the title "Predial Servitudes" in the Louisiana Civil Code. A literal reading of these articles, their location in the Code, and Domat's explication of the servitudes, on which Articles 667, 668, and 669 are based,[1] would indicate that the obligations imposed were predial servitudes imposed by law on a subservient estate for the benefit of the dominant estate. Bruno v. Employers' Liability Assurance Corp., La.App.1953, 67 So.2d 920; Hauck v. Brunet, La.App. 1951, 50 So.2d 495. Since 1947, however, when the Louisiana Supreme Court decided Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816, Louisiana courts have extended the articles beyond any narrow concept of predial servitudes and have applied them broadly to activities classifiable in the common law as "nuisances." Fontenot v. Magnolia Petroleum Co., 1955, 227 La. 866, 80 So.2d 845; O'Neal v. Southern Carbon Co., 1947, 211 La. 1075, 31 So.2d 216; Codding v. Braswell Supply Co., La.App. 1951, 54 So.2d 852.

In Devoke the Court found that the operation of a railroad terminal, causing the emission of smoke, gas, soot, and cinders, was a nuisance—in violation of Articles 666 and 667, "the basic law of the state". On strict liability, without regard to negligence, the Court affirmed a judgment for damages in favor of some eighty plaintiffs. In reaching this result the Court relied heavily on common law authorities, citing numerous decisions from common law states and quoting extensively from Winfield, The Law of

---

1. Articles 667, 668, and also article 669 are not found in the Code Napoleon or the present French Civil Code. They track Domat's language. 1 Domat, The

Civil Law in its Natural Order 441–42, Nos. 1046, 1047 (Cushing's ed. Strahan Transl. 1853). The articles are included in the Louisiana Civil Code of 1808.

Torts, Ruling Case Law, and American Jurisprudence.[2]

The language, italicized in the instructions, which the trial judge employed to describe the balancing process in determining a nuisance, is taken verbatim from a quotation relied on in Devoke.[3] This quotation is from American Jurisprudence, *verbo* Nuisance. 39 Am.Jur. 324, § 43. Both the Louisiana Supreme Court and the trial judge in the case at bar prefixed to the quotation the words, "It is the universally accepted rule of law".

In short, the second interrogatory put to the jury fairly and in words it could understand the controlling question in the case: was the defendant's operation of its plant a nuisance as to Eastern? The interrogatory, as phrased and as explained in the instructions, was in complete harmony with the Louisiana law of nuisance.

■ Counsel for Eastern submitted, among other requested charges, the following:

"(19) A property owner has no right to maintain a nuisance to the injury of another even in pursuit of a lawful trade or occupation and liability in such case does not depend upon negligence.

"(20) To disclose a cause of action in cases of this character and to recover damages, it is unnecessary to prove negligence, but only that defendant used his property so as to cause injury or damage to third parties."

These requested charges undoubtedly state the law of Louisiana. A trial judge, however, is under no duty to grant a requested charge, even if it is an accurate statement of law, if the instructions are fair, clear, and adequate in themselves. The court's emphasis on cause, the omission of any reference to negligence in the first three interrogatories, and the inclusion of references to negligence in the last four interrogatories were enough to make the jury understand that nuisance does not depend on negligence.

We conclude that there is no merit to any of the appellant's specifications of error relating to the nuisance claim.

II.

■ A. Eastern contends that the trial judge erred in not admitting into evidence the complete reports of the American Cyanamid Company's Air Pollution Committee. This committee was organized in April 1959 to investigate complaints from Moisant Airport and neighboring residential districts, and to report on what steps might be taken toward reducing excessive smoke from the plants. These records, based upon periodic observations, indicated the extent, severity, and source of the haze and smog emitted from various sections of the plant. The plaintiff was allowed to present most of these reports to the jury, but the trial judge excluded notations on three smog reports indicating that the airport had complained to the defendant about the smog. Eastern objects especially to the court's excluding the following statement by the head of American Cyanamid's Industrial Hygiene Survey:

"It is recommended that this problem [of reduced visibility at the airport caused by smog from American

2. The Court did not cite Article 2315, the basic delictual article in the LSA–Civil Code: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it". For a civilian view of nuisance, based on a reading of Article 2315 with Articles 667, 668, and 669, without benefit of common law authorities, see Stone, the Loesch case and Article 667, 17 Tul.L. Rev. 596 (1943); Stone, Tort Doctrine in Louisiana: The Materials for the Decision of a Case, 17 Tul.L.Rev. 159, 209–212 (1942); Herget, Strict Liability for Uses of Property under the Louisiana Civil Code, 20 La.L.Rev. 379 (1960).

3. Except that the instructions omit the phrase, "not per se a nuisance".

Cyanamid's plants] be actively pursued to a satisfactory solution to abate this nuisance."

This, the plaintiff urges, was a declaration against interest by the man in the defendant's organization most qualified to recognize and evaluate the severity of a smog condition.

█ Our study of the record shows that the trial judge followed a very liberal policy in the admission of evidence, a policy from which the plaintiff benefited as frequently as the defendant. The trial judge admitted freely testimony as to the existence and activities of American Cyanamid's Air Pollution Committee over defendant's objection that evidence of repairs, improvements, or preparations for improvements made *after* an accident is inadmissible. The rule on which the defendant unsuccessfully relied is so widely recognized that it hardly requires citation of authority. Wigmore points out that there are two reasons for excluding such evidence: First, the inference from the act of improvement to prior negligence is not the most probable one, for repairs or improvements merely indicate a belief that the object repaired has been capable of causing the injury, not that the injury was caused by the owner's negligence. Second:

"[A]n argument of policy has always been invoked to strengthen the case for exclusion. That argument is that the admission of such acts, even though theoretically not plainly improper, would be liable to overemphasis by the jury, and that it would discourage all owners, even those who had genuinely been careful, from improving the place or thing that has caused the injury, because they would fear the evidential use of such acts to their disadvantage; and thus not only would careful owners refrain from improvements, but even careless ones, who might have deserved to have the evidence adduced against them, would be refraining from improvements subject innocent persons to the risk

of the recurrence of the injury." 2 Wigmore, Evidence § 283, pp. 151–52 (3d ed. 1940).

The Louisiana Supreme Court has followed this latter rationale in holding that evidence of subsequent improvements is not admissible. Givens v. DeSoto Bldg. Co., 1924, 156 La. 377, 100 So. 534.

There are, however, several exceptions to this rule of exclusion, and the reports of defendant's Air Pollution Committee were here admitted as evidence of smoke conditions at the plant at a time subsequent to the accident, from which an inference of conditions at the time of the accident could be drawn. See McCormick, Law of Evidence § 252(g) (1954); Comment, Admissibility of Evidence of Subsequent Safety Measures, 37 Texas L.Rev. 478 (1959). Cf., F. W. Woolworth Co. v. Seckinger, 5 Cir. 1942, 125 F.2d 97. Such evidence must be strictly limited to the specific evidential purpose for which it is introduced. As Wigmore has stated,

"[S]ince the condition of a place or thing at the time of an injury may always be evidenced by showing its condition before or after that time, provided no substantial change has occurred, the description of the *condition of the place subsequent to the injury may* necessarily involve a mention of the fact of repairs; but this use of the fact should be guarded against misuse for the forbidden purpose." 2 Wigmore, Evidence § 283(4) p. 158 (3d ed. 1940).

Although the reports of the Air Pollution Committee were admitted into evidence, the trial judge cautioned the jury against considering them for any purpose other than as evidence of smoke conditions as these might have existed at a time prior to the periods when the records were made.

█ A trial judge has a large amount of discretion in his evidentiary rulings. We cannot say that he erred in excluding notations on the reports concerning complaints by the airport of-

ficials, although sitting as trial judges we might have admitted the evidence. Underlying these notations were strata of hearsay. The best evidence of such complaints would have been the testimony of the airport officials who made them or the plant officials to whom they were communicated. In fact, on several occasions the plaintiff elicited testimony to the same effect as the notations. We conclude that the exclusion of these three notations did not restrict Eastern unduly in the presentation of its case.

Similarly, we hold that it was not prejudicial error for the trial judge to exclude the statement recommending steps "to abate this nuisance." This statement was an indication of planned subsequent improvements and excludable on that ground. See Wigmore, supra. It was also a conclusory statement as to the existence of a nuisance. A section of the report preceding the challenged sentence and more factual in nature was admitted. It stated,

> "Vinyl chloride is burned in a flare and the products of combustion are released to the atmosphere. One of the products of combustion is HCl. This combines with ammonia, also liberated to the atmosphere from a number of small leaks both in the ammonia plant and in the storage facilities. When these combine, ammonium chloride particles are formed. Depending upon weather conditions, this ammonium chloride cloud causes a noticeable reduction in visibility downwind from the plant. The prevailing wind in this area is from the south and south-southeast. The wind carries this ammonium chloride toward the Moisant Airport and contributes to a reduced visibility at times. This has been the subject of some discussions with the authorities at the airport. ¶ It is understood that some sampling is to be undertaken by the plant personnel at various locations downwind from the plant to gather some factual data on the amount of material present in the air. There are no

other industrial operations within a reasonable distance of the Fortier plant so that there seems to be no question but what this fog condition is due to our plant."

These observations gave the jury an ample basis for making up its own mind on the question whether smoke from the plants constituted a nuisance. Indeed, the use of such a term as "nuisance" in its popular rather than its legal sense might well have confused the jury. Apparently, so the trial judge thought. He acted within his discretion in excluding the statement.

B. Finally, Eastern asserts that the court erred in admitting the testimony of Peter D. Danforth as that of an expert witness. Danforth had been an Air Force pilot and had logged 1100 hours in a four-engine military airplane. He had been sitting in the forward section of Eastern's Flight 545 at the time of the accident. Danforth testified at the trial that the approach over the threshold was too high and too fast. The plaintiff argues that the admission of his opinion testimony as that of an expert witness was clearly erroneous, since Danforth had no experience flying commercial aircraft, was unfamiliar with landing procedures at Moisant Airport, and was sitting at a place in the plane where precise observations would have been impossible.

The issue of Danforth's qualifications as an expert witness is primarily a matter within the sound discretion of the trial judge. Langham, Langston & Burnett v. Blanchard, 5 Cir. 1957, 246 F.2d 529, 533–34; Mutual Life Ins. Co. of New York v. Treadwell, 5 Cir. 1935, 79 F.2d 487, 488–89. As we stated in Reuter v. Eastern Air Lines, 5 Cir. 1955, 226 F.2d 443, 445, "Competency and qualifications of one offered as an expert witness, and the extent to which his opinion may be required, are matters addressed largely to the judicial discretion of the trial judge." Here Danforth's lack of experience in flying commercial aircraft and his position in the plane went to the weight of his testi-

mony, and not, as plaintiff urges, to its admissibility. Roth v. Bird, 5 Cir. 1956, 239 F.2d 257, 262. There was no abuse of discretion in admitting his testimony.

The Court has considered all of the specifications of error and all of the appellant's arguments whether or not all have been expressly mentioned and discussed in this opinion.

The judgment is affirmed.