Arnold **BAILEY**, Plaintiff-Appellant,

v.

**KAWASAKI–KISEN, K. K.,** Defendant-Appellee.

No. 71–1599.

United States Court of Appeals, Fifth Circuit.

Jan. 25, 1972.

---

Arnold C. Jacobs, New Orleans, La., for plaintiff-appellant.

Paul A. Nalty, Chaffe, McCall, Phillips, Burke, Toler & Sarpy, New Orleans, La., James W. Hailey, Jr., Mouton, Roy, Carmouche & Hailey, Metairie, La., for defendant-appellee.

Before JOHN R. BROWN, Chief Judge and TUTTLE and RONEY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This appeal presents the question of whether or not evidence of subsequent corrective measures and evidence of a subsequent failure of the same apparatus is admissible to negate a shipowner's asserted defense of instant unseaworthiness in a suit for damages arising from alleged personal injuries sustained on the

shipowner's vessel during unloading operations.[1]

On May 7, 1968, Appellant Bailey and other members of a longshore crew were rigging the LOUISIANA MARU for unloading operations when a boom that was being positioned over one of the hatches fell. Appellant, while dashing for safety lost his footing, sustaining the injuries which are complained of in this suit.

The exclusion of evidence is crucial because the District Judge in the general charge with special interrogatories, F.R. Civ.P. 49(a), declared that the falling of the boom rendered the vessel unseaworthy as a matter of law. But he went on to charge that there would be no liability if—as another interrogatory inquired—the falling of the boom (which created the unseaworthiness) was caused by the operational negligence of the longshoremen.

## The Effort To Prove What Happened

At trial, Appellant sought to introduce evidence that a few minutes after this first incident the boom fell again under conditions which the jury could infer were identical to those existing at the time of injury. He also sought to prove that after the second fall members of the ship's crew removed excess grease from the cables and drum of the winch which had been used to position the boom and that, thereafter, all worked perfectly. Over the objection that this was impermissible proof of corrective action, the Trial Judge excluded this evidence. So far as the jury officially knew, the boom dropped but once and the only explanation offered was improper handling by the longshoremen with no breath of a suggestion that it was due to excess grease on the drum and cable.

## Verdict for "Operational Negligence"

On special interrogatories with a general charge, F.R.Civ.P. 49(a)—which once again proves their value,[2] since they excise precisely what the jury found and which might have been obscured under the enigma-wrapped-in-a-mystery of a general verdict for Shipowner—the jury found in response to interrogatory number 2 that "the operational negligence of the * * * fellow longshoreman cause[d] the boom to fall," and that this was the proximate cause of Bailey's injuries. On that and Usner v. Luckenbach Overseas Corp., 1971, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562, 1971 A.M.C. 277,[3] the Court entered judgment for Shipowner. Bailey appeals, asserting that the Trial Court erred in excluding the evidence of the subsequent corrective measures and subsequent failure of the apparatus. We reverse the Trial Court's decision and remand the case for a new trial.

## Excluded Evidence Crucial

The excluded evidence was crucial to Bailey's theory which in a practical, not a burden of proof, sense had to overcome Shipowner's theory. Shipowner apparently based its defense of instant unseaworthiness upon the theory that the fellow longshoreman had negligently rigged the winch which was being used to position the boom when it fell. The implication was that they had wound the cable around the winch drum in the

1. We find Appellant's other points of error to be without merit and therefore limit our discussion to the question presented by the Trial Court's exclusion of the evidence of the subsequent corrective measures and the subsequent falling of the boom.

2. See, J. Brown, Federal Special Verdicts: The Doubt Eliminator, 1968, 44 F.R.D. 338. See also Thrash v. O'Donnell, 5 Cir., 1971, 448 F.2d 886; Todd Shipyards Corp. v. Jasper Electric Service Co., 5 Cir., 1969, 414 F.2d 8; Bornmann

v. Great Southwest General Hospital, 5 Cir., 1971, 453 F.2d 616.

3. In *Usner* the Supreme Court ended the controversy surrounding the defense of "instant unseaworthiness." The Court there upheld this Court's decision that a longshoreman could not recover from a shipowner under the doctrine of unseaworthiness for injuries which were caused by the operational acts of fellow longshoremen which simultaneously caused the injury and created the condition claimed to be unseaworthy.

wrong direction, thereby causing the boom to be lowered rather than raised when the winch was put into operation.

On the other hand, Bailey contended that excess grease on the cables and drum made it impossible to achieve the necessary "friction" to hold the cable in place, thereby causing the boom to fall.[4]

### Shipowner's Support of Exclusion

■■ In addition to the usual exclusionary rule Shipowner urges two other reasons why Bailey cannot succeed on his claim of error. First, the Trial Court on two separate occasions instructed the jury that the falling boom rendered the ship unseaworthy. Shipowner contends that this instruction does away with any necessity for the excluded evidence since it was offered on the issue of unseaworthiness. We do not agree. These instructions clearly focus attention on the only real issue—the defense of instant unseaworthiness or operational negligence, as the Court phrased it. Second, Shipowner also points to certain pretrial stipulations. These do not touch the problem involved here, i. e., whether or not there was too much grease on the cables and drum for the winch to operate effectively. The parties merely stipulated that at the beginning of the unloading operations by the stevedoring company there was nothing improper about the rigging of the cargo boom or cargo gear and that the ship's crew had nothing to do with the rigging. This stipulation did not cover the point which is in issue regarding the Shipowner's defense of instant unseaworthiness.

Our approach to the admissibility question is facilitated by dividing it up into its natural parts—(i) removing the grease, a corrective measure and (ii) the second similar occurrence.[5]

### The Greasy Winch

■■ It is, of course, the general rule that evidence of subsequent corrective measures is not admissible. This Court found the general rule of exclusion to be "so widely recognized that it hardly requires citation of authority." Eastern Air Lines Inc. v. American Cyanamid Company, 5 Cir., 1963, 321 F.2d 683, 690. As is the case with most general rules, however, there are several so-called recognized exceptions. We say "so-called" because they are really a part of the rule and a reflection of the purposes behind the rule. Thus evidence of subsequent corrective measures *is* admissible to demonstrate the condition of the place or thing involved at the time of the injury. Steele v. Wiedemann Machine Co., 3 Cir., 1960, 280 F.2d 380; Johnson v. United States, D.C.Mont., 1958, 163 F.Supp. 388, aff'd, 9 Cir., 1959, 270 F.2d 488.

This Court in *Eastern Air Lines, supra,* recognized this exception to the general rule and stated that "since the condition of a place or thing at the time of an injury may always be evidenced by showing its condition before or after that time, provided no substantial change has occurred, the description of the condition

---

4. The second incident and the ship crew's successful efforts to eradicate the deficiency was no spur of the moment afterthought in the heat of trial. The theory had been spelled out in categorical terms in paragraph 6(a) of the amended pretrial order approved by the Judge and in which there was no reservation of admissibility:

"Complainant further avers that the said winch was heavily and improperly coated with grease, causing the pole engaging the gear teeth to fail to hold. Complainant further avers that on inspection, this was ascertained, the winch was used a second time this time by the crew of the vessel and slipped on the second occasion also. Complainant further avers that subsequent thereto, the crew of the vessel degreased the winch mechanism and thereafter, the winch functioned properly. Complainant further avers that the accident hereinabove described occurred on the first occasion when the winch was used."

5. For a comprehensive discussion of the controversy surrounding the exclusion of evidence concerning subsequent corrective measures see Schwartz, The Exclusionary Rule on Subsequent Repairs—A Rule in Need of Repair, 7 The Forum 1 (1971).

of the place [or thing] subsequent to the injury may necessarily involve a mention of the fact of repairs; but this use of the fact should be guarded against misuse for the forbidden purpose." 321 F.2d at 690.

Wigmore explains this "forbidden purpose" to be admission of such evidence to demonstrate the defendant's awareness or implied admission of "his negligence, connivance or other culpability in causing the injury." 2 Wigmore, ¶ 283 p. 158. Another basic policy reason for excluding such evidence is that it is thought by admitting such evidence defendants will be prompted to allow dangerous conditions to continue to exist rather than making corrections or repairs. 2 Wigmore, *supra*, at 151.

■ In our case the evidence of the excessive grease was not offered to prove that by removing it, Shipowner in effect acknowledged that it was negligent— i. e., guilty of fault. Rather, it was offered in the context of Shipowner's successful defensive theory to show the operational *cause*, not who was to blame. It was also legitimately offered to show that on theories of negligence or the "reasonable" fitness concept of seaworthiness, the danger could easily be eliminated by the most perfunctory of operations. The evidence was offered to negate the Shipowner's defense of operational negligence by showing that the winch was in fact defective because it was too greasy to operate properly.

It is clear then that Wigmore's "forbidden purposes" were not at issue in the attempt to introduce this evidence. Nor does it here offend the policy favoring the repair or correction of dangerous conditions. The basic soundness of the

policy favoring repair as mirrored by numerous decisions is, of course, unquestioned. The law can reach the judgment that if in every suit for injuries to persons or property the defendant's acts of repair or correction could be admitted into evidence as bearing on his negligence, things would seldom, if ever, be repaired. The necessity to avoid that situation and the calamities which would result therefrom in the usual case outweigh the value of a general rule of admissibility of evidence of subsequent corrective measures. In certain limited instances, however, the policy favoring the repair of dangerous conditions is overcome by the duty of courts to allow litigants to bring the facts of the situation to the attention of the jury where they are otherwise relevant and probative.

We hold, therefore, that in very limited situations, such as that presented in our case, the policy favoring repair must be subordinated to the necessity for getting at the truth. At the next trial the Trial Judge upon a determination that no substantial changes occurred in the time between the initial falling of the boom and the removal of the excess grease, should therefore admit the evidence of that removal. The jury should of course be suitably instructed as to the purposes for which the evidence may be considered.

### The Second Falling

■ At the outset it bears emphasis that this Court has traditionally favored a policy of liberal interpretation of F.R. Civ.P. 43(a).[7] In Hambrice v. F. W. Woolworth Co., 5 Cir., 1961, 290 F.2d 557, 559, we stated "while Rule 43 has been criticized as not entirely clear, it is settled that, in an action brought in the

---

7. Rule 43(a) provides:
   "Form and Admissibility. In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by these rules. All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes of rules to which reference is herein made. The competency of a witness to testify shall be determined in like manner."

Federal District Court, in determining the admissibility of evidence, the court is not bound by a state court rule if that is less liberal than another rule which the court might be free to adopt. In determining admissibility of evidence where there is a conflict of state and federal rule, plaintiff is entitled under Rule 43 to the benefit of the more favorable rule. Roth v. Swanson, 8 Cir., 145 F. 2d 262. In the federal court, the rule, whether federal or state, which favors reception of evidence governs. New York Life Ins. Co. v. Schlatter, 5 Cir., 203 F.2d 184. The admissibility of evidence in a federal court is a rule of procedure governed by federal law and not a rule of practice to be governed by state law. Gillespie v. Equitable Life, D.C., 152 F. Supp. 109. The Federal Rules of Civil Procedure indicate a general policy to disregard technicalities and form and to determine rights of litigants on the merits and to that end the rules are liberally construed. Fakouri v. Cadais, 5 Cir., 147 F.2d 667, at page 668. Cf. Monarch Ins. Co. of Ohio v. Spach, 5 Cir., 281 F.2d 401." And as Judge Wisdom phrased it for us, "if they are worth their salt, evidentiary rules are to aid the search for truth. Rule 43(a), notwithstanding its shortcomings, carries out that purpose by enabling federal courts to apply a liberal, flexible rule for the admissibility of evidence, unencumbered by common law archaisms." Dallas County v. Commercial Union Assurance Co., 5 Cir., 1961, 286 F.2d 388, 395. And it was *Spach* and *Dallas County* which precipitated the study and eventual approval of comprehensive Rules of Evidence by the Judicial Conference which are pending before the Supreme Court.[8]

Wigmore, writing on the very problem we face, states that "the tendency, capacity or quality [of a machine or apparatus] so far as it exists, may show itself through its material effects. Instances of the effects of its apparent operation under substantially similar circumstances will serve to evidence it."[9] More specifically, Wigmore goes on, in this way the existence of "the tendency of a machine or apparatus, as shown by other instances of its operation under similar circumstances, to operate defectively or otherwise (for example in actions for breach of warranty or personal injury)" may be demonstrated.[10] 2 Wigmore, *supra*, ¶ 451 p. 450. See Chicago Gt. Western R. Co. v. McDonough, 8 Cir., 1908, 161 F. 657; Southern Pacific R. Co. v. Kauffman, 9 Cir., 1931, 50 F.2d 159; Spreitler v. Louisville & N.R. Co., D.C.Ill., 1940, 36 F.Supp. 117.

■ Bailey offered his evidence of the subsequent falling of the boom to show that the apparatus used to position the boom was in some way defective, not just improperly used by longshoremen. This proof was offered to refute the Shipowner's theory that the negligence of fellow workers caused the accident. It went again to *cause*, not *blame*. It is clear that this evidence falls within the above-mentioned rule favoring admission. By showing that the apparatus failed a short time after the accident, with no intervening changes, the jury might have concluded that the boom apparatus had a tendency to operate defectively. It became even more probative in connection with the greasy condition which was so easily eliminated.

8. See The Revised Draft of the Proposed Rules of Evidence for the United States Courts and Magistrates, March 1971, 51 F.R.D. 315.

9. 2 Wigmore on Evidence, *supra*, ¶ 451 p. 444.

10. The Supreme Court in Usner v. Luckenbach Overseas Corp., *supra*, while stating the factual background of the case, recognized at least inferentially the relevancy and probative value of evidence of subsequent operational difficulty when the issue of "instant unseaworthiness" is involved. The Court there stated, "neither before nor after [the longshoreman's injury] was any difficulty experienced with the winch, boom, fall, sling, or any other equipment or appurtenance of the ship or her cargo." 400 U.S. at 495, 91 S.Ct. at 515, 27 L.Ed. 2d at 565.

It is true that we often say that the exclusion of evidence of this nature is within the "sound discretion" of the Trial Judge. Southern Pacific R. Co. v. Kauffman, *supra*, 50 F.2d at 163. This discretionary power does not, however, allow the Trial Court to exclude competent evidence which is essential and vital to a litigant's case unless there is a sound practicable reason for barring it. See United States v. 60.14 Acres of Land, etc., 3 Cir., 1966, 362 F.2d 660. All must be looked to in terms of the purpose of the rule of exclusion, the interests to be served by admissibility and the qualifying instructions, if any, needed to eliminate the probability of harm.[11]

If the evidence proffered satisfies the conditions we have delineated the Court on retrial should admit it with such safeguard instructions as the case then factually requires.

Reversed and remanded.

11. In Jones & Laughlin Steel Corp. v. Matherne, 5 Cir., 1965, 348 F.2d 394, this Court recognized the admissibility of evidence concerning prior accidents because of its bearing on the issue of the harmful tendency or harmful capacity of the apparatus allegedly causing the injury. Although the present case involves a distinguishable evidentiary question which has been dealt with in a different line of precedents, 2 Wigmore, *supra*, ¶ 451 p. 453, we think the factors used to determine the probative value of the evidence in that case are equally applicable to the evidence in this case. See 2 Wigmore, *supra*, ¶ 437 p. 413.