Philip A. ROLLINS, as the personal representative of the Estate of Alison Rollins and Priscilla Rollins, individually, Plaintiffs,

v.

The BOARD OF GOVERNORS FOR HIGHER EDUCATION; Peterson Builders, Inc., and the United States of America, Defendants,

v.

JOHN W. GILBERT ASSOCIATES, INC., Third–Party Defendant.

Civ. A. No. 88–0482P.

United States District Court,
D. Rhode Island.

April 10, 1991.

John T. Walsh, Jr., Providence, R.I., for plaintiffs.

Howard E. Walker, Hinckley, Allen, Snyder & Comen, Providence, R.I., for Peterson Builders.

Irving A. Pianin, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Suzanne G. Curt, Asst. U.S. Atty., Providence, R.I., for U.S.

Berndt W. Anderson, Roberts, Carroll, Feldstein & Peirce, Providence, R.I., Louis Saccoccio, Mary Kennard, Gen. Counsel, University of Rhode Island, Kingston, R.I., for Bd. of Governors.

Barbara S. Cohen, Goldenberg & Muri, Providence, R.I., Augustus F. Wagner, Jr., Nutter, McClennen & Fish, Hyannis, Mass., Leonard W. Langer, Marshall J. Tinkle, Thompson, McNaboe, Ashley & Bull, Portland, Me., for John W. Gilbert Associates, Inc.

## ORDER

PETTINE, Senior District Judge.

In the above captioned case, the plaintiffs' decedent was electrocuted while working on the ship-to-shore power cable connection of the vessel, Endeavor. Defendants have filed two motions in limine. In the first, they seek to exclude evidence of actual changes in procedures or hardware made after the August 11, 1986 incident. In the second, they move to exclude all reference to an investigative report prepared by a Board of Inquiry after August 11, 1986. By their own admission, they do not seek to exclude "any evidence of their employees' *prior* deliberations or decision to change the ship end of the power cable...."

I. *Actual Changes in Procedures or Hardware*

Under Fed.R.Evid. 407, evidence of "subsequent measures is not admissible to prove negligence or culpable conduct ... unless offered for another purpose, such as proving ownership, control, or feasibility of precautionary measure, if controverted, or impeachment." Although plaintiff argues, citing to Wright & Graham, Federal Practice and Procedure: Evidence § 5285, p. 128 n. 53, that "where the plaintiff can show that the remedial measure was not a result of his accident the supposed incentive of the rule has already failed and there seems to be little reason to protect a defendant who has not shown diligence in taking precautions[,]" this Court does not agree.

▮ It has long been established that Rule 407 has its basis in public policy concerns. Admitting such evidence might discourage steps to improve safety. *Ramos v. Liberty Mutual Insurance Co.*, 615 F.2d 334, 341 (5th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1980); *Bailey v. Kawasaki Kisen K.K.*, 455 F.2d 392, 396 (5th Cir.1972) (subsequent repair evidence should be excluded when used to "demonstrate the defendant's awareness or implied admission of 'his negligence, connivance or other culpability in causing the injury' "). This policy is not served by admitting evidence of subsequent repairs, even if the decision to make such repairs was made prior to the incident being litigated. Once an accident occurs, there is even more reason to encourage defendants to take remedial measures. Defendants should not fear that if litigation ensues after a particular incident, any remedial measures taken will be admitted to prove their negligence.

▮ In the instant case, all evidence of discussions, drafts, proposals, deliberations or actual alterations or repairs regarding either the hardware or the procedures involved with the operation of the ship-to-shore power cable connection that occurred *prior* to the incident on August 11, 1986 will be admitted. This evidence is not governed by Rule 407 and is highly probative as to notice and knowledge of the potential

dangers of the ship-to-shore hardware and procedures. Evidence of *actual* repairs, alterations or procedural changes made after August 11, 1986 are inadmissible.

■ This Court, however, makes a reservation in accord with Rule 407. Subsequent repairs, alterations, or procedural changes may be admissible if offered to prove ownership, control or feasibility of precautionary measure, if such is controverted. Moreover, defendants should be on notice that such evidence may also be admitted if necessary for impeachment purposes or if plaintiff seeks to admit the evidence for reasons other than to demonstrate the defendants' culpability. *See Bailey*, 455 F.2d at 396 ("In certain limited instances, however, the policy favoring the repair of dangerous conditions is overcome by the duty of courts to allow litigants to bring the facts of the situation to the attention of the jury where they are otherwise relevant and probative.")

■ With regard to the defendants' argument that Fed.R.Evid. 403 excludes any evidence of subsequent repairs, alterations, or procedural changes because of "its detrimental effects on the jury and the unfair prejudice to the defendants' case," this Court is unconvinced at this time. Such evidence, if it were to be allowed under an exception to Rule 407, would be material and relevant. The fact that such evidence may "hurt" the defendants' case does not mean that its probative value is outweighed by its prejudicial effect. " '[U]nfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.' " *Dollar v. Long Mfg., Inc.*, 561 F.2d 613, 618 (5th Cir.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1987).

## II. *Board of Inquiry Report*

The admissibility of the Board of Inquiry Report raises a number of issues all of which cannot all be resolved here. I will merely outline those issues and instruct the parties to attempt to come to an agreement in accordance with this memorandum with regard to what parts of the report must be redacted. Any issues that cannot be resolved in this way, will be resolved at trial.

■ The first issue is whether the Board of Inquiry Report is relevant. Under Fed.R.Evid. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The scope of the rule is broad. *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 922 (3rd Cir.1985). The plaintiffs contend that they are offering the report to show that the final public report of the incident was merely a "whitewash" and that the report is relevant was to show the defendant's "consciousness of guilt."

> It has always been understood—the inference indeed is one of the simplest in human experience—that a party's *falsehood* or *other fraud* in the preparation and presentation of his cause, his fabrication or suppression of evidence by bribery or spoliation, is receivable against him as an indication of his consciousness that his case is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit. *McQueeney*, 779 F.2d at 921.

While the report does not appear to evidence bribery or fabrication, if material was specifically excluded from the document, then it may be possible to draw an inference from that conduct with regard to the defendants' knowledge of wrongdoing. Such inference would be probative and not unduly prejudicial or inflammatory. The defendants contend that all the substantive documents used for the report are available and that, therefore, the final report is simply duplicative. As plaintiffs intend to use the report to show what was left out of it, the fact that the underlying information can be introduced is unavailing. Assuming that the evidence bears out the plaintiffs' contention, the report would be relevant. One part of the report, however, while relevant is, at least in part, inadmissible; section I and the last paragraph of page 11

which deal with recommendations for changes in hardware and procedures. See, *supra,* discussion of subsequent remedial repairs and Rule 407. The same policy concerns that militate against admitting subsequent remedial repairs apply to those parts of the report that specifically recommend changes in procedures and hardware. As Section I (and the last paragraph of page 11) is almost entirely made up of recommendations, there is very little that is admissible. Once again, however, I caution the defendants that this evidence will be admissible should it fall within one of the exceptions to Rule 407.[1]

■ The first question that must be answered after the relevancy determination is whether the report is being offered for a hearsay purpose: is the report being offered for the truth of the matter asserted? Fed.R.Evid. 801(c). I leave this to the parties for discussion. If the report is not being offered for the truth but rather to show the defendant's state of mind then the basic hearsay question becomes moot. *See Kassel v. Gannett Co., Inc.,* 875 F.2d 935, 945 (1st Cir.1989).

Assuming that the report is being offered for the truth of the matter asserted, we must then consider whether it is hearsay at all. Under Fed.R.Evid. 801(d)(2), admissions by a party-opponent are not hearsay. The next question then is whether the Board of Inquiry Report qualifies as an admission of the defendant, Board of Governors.

Admissibility under Rule 801(d)(2) is basically governed by the common law rules of agency. *Sabel v. Mead Johnson & Co.,* 737 F.Supp. 135, 138 (D.Mass.1990). When an agent is employed to investigate and analyze an accident, such report is an admission of the principal. *Collins v. Wayne Corp.,* 621 F.2d 777, 782 (5th Cir.1980). In making the report, the agent is "performing the function [the principal] employ[s] him to perform." *Id.* The agent is, therefore, acting on the "principal's behalf [and]

is impliedly authorized to speak on the same matters." *Sabel,* 737 F.Supp. at 139.

The trend is toward the broad admissibility of agent's statements, "the words of the agent will be received in evidence as the admissions of the principal if they were spoken or written within the scope of the authority of the agent to speak or write for the employer." McCormick on Evidence, § 267 at 640–641 (2d Ed.1972). The Board of Inquiry was made up almost entirely of University of Rhode Island employees, they were acting within the scope of their employment. Mr. Ireland and Mr. Dimmock were hired to participate in the inquiry; they were acting as agent's of the Board of Governors.

"The question ... arises whether a statement by an agent, in order to qualify as an admission, must be made to an outsider rather than to the principal or to another agent." McCormick, *supra,* at 642. "[D]o [these statements] as a class have the degree of trustworthiness required to counterbalance the hazards of hearsay?" *Id.* at 643. This Court believes that they do.

"While slightly less reliable as a class than the agent's authorized statements to outsiders, intra-organization reports are generally made as a basis for some action, and when this is so, they share the reliability of business records.... No special danger of surprise, confusion, or prejudice from the use of the evidence is apparent. There seems little basis, then for shaping our rule of competence of admissions to exclude this type of statement." *Id.*

I find, therefore, that the Board of Inquiry Report is generally admissible under Fed. R.Evid. 801(d) either as "a statement by a person authorized by the party to make a statement concerning the subject," or as "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(C), (D).[2] The report, even if not

---

1. In defendants' reply brief they note that their Rule 407 objection relates only to Section I and the last paragraph of page 11.

2. As the report would be admissible, if offered for the truth of the matter asserted, as a representative admission, it is only admissible against the Board of Governors.

prepared for outside consumption, is "trustworthy." This is evidenced by the fact that it was used by the Board of Governors and provided a basis for changes that were put into place. Moreover, those who prepared the report were in a "fiduciary" relationship with the Board of Governors—they were either employees or others specifically hired to prepare the report. The members of the Board of Inquiry "spoke for" the Board of Governors.

 The defendants argue that even if the report is generally admissible, it contains double hearsay and lay opinions which must be redacted. "This [however] is no valid objection to an admission." *Pekelis v. Transcontinental & Western Air,* 187 F.2d 122, 129 (2d Cir.), *cert. denied,* 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374 (1951). Reports such as the report in the instant case do "not merely repeat what was told the board by witnesses, but [draw] inferences as to what in fact happened...." *Id.* The conclusions cannot be disentangled from the facts. "The fact that [the report is] based on hearsay and expresse[s] opinions would go to ... credibility rather than to ... admissibility." *Id.; see, Beech Aircraft Corp. v. Ramey,* 488 U.S. 153, 109 S.Ct. 439, 450, 102 L.Ed.2d 445 (1988) ("[P]ortions of investigatory reports otherwise admissible under Rule 803(8)(c) are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible....")

> 'The admissibility of an admission made by the party himself rests not upon any notion that the circumstances in which it was made furnish the trier means of evaluating it fairly, but upon the adversary theory of litigation. A party can hardly object that he had no opportunity to cross-examine himself or that he is unworthy of credence save when speaking under sanction of oath.' McCormick, *supra,* at 628–29 (quoting Morgan, Basic Problems of Evidence 266 (1962)).

Any statements, therefore, drawing upon facts that are not within the personal knowledge of the Board or statements expressing opinions need not necessarily be redacted.

Finally, the defendant contends that the report should be excluded under Fed.R. Evid. 403 as it will mislead and overburden the jury. This Court is not convinced at this time that is so. Much of the report is admissible. What may not be admissible can be redacted. Probative evidence should not be excluded merely because it may take extensive testimony to present.