Sarah Helen Williams **DOLLAR**, Plaintiff-Appellant,

v.

**LONG MFG., N. C., INC.,** Defendant and Third-Party Plaintiff-Appellee,

v.

**NICHOLS TRACTOR COMPANY, INC.,** Third-Party Defendant.

No. 76–1018.

United States Court of Appeals, Fifth Circuit.

Oct. 21, 1977.

Rehearing and Rehearing En Banc Denied Nov. 30, 1977.

---

Harry Jay Altman, II, Thomasville, Ga., for plaintiff-appellant.

B. L. Weinberg, Jr., John H. Stanford, Jr., Atlanta, Ga., for defendant and third-party plaintiff-appellee.

Before TUTTLE, MORGAN and HILL, Circuit Judges.

HILL, Circuit Judge.

This is a diversity action, arising in Georgia, alleging wrongful death. Plaintiff-appellant Sarah Dollar appeals from a directed verdict and judgment entered against

her in this products liability action for the death of her son, James Dollar. He was killed while operating a backhoe designed, manufactured and marketed by the defendant-appellee Long Manufacturing Company (Long). Defendant made the tractor dealer, Nichols Tractor Company, Inc., (Nichols) a third party defendant, seeking contribution or indemnity in the event of plaintiff's recovery.

The correctness of certain discovery and evidentiary rulings in the trial court prior to and during trial are the issues presented for decision. We reverse.

James Dollar, plaintiff's son, was an employee of the Decatur County, Georgia, government. On June 13, 1972, he was assigned to dig for and locate a water main in a local industrial park. He was to use a Long Model 1200 backhoe, a farming and industrial implement particularly suited for such a task. The backhoe was attached to a John Deere tractor equipped with a three point hitch. By activation of a control lever on the tractor, the three point hitch could be raised or lowered thereby raising or lowering the implement attached to the hitch. A canopy rollbar had been affixed to the tractor.

While digging to locate the water line on the morning of June 13th, James Dollar was killed when he was crushed between the control panel of the backhoe and the rollbar canopy of the tractor.

The plaintiff's son died before anyone arrived at the scene, and there were no eyewitnesses to the occurrence. The critical issue in the case became the cause of the backhoe's lifting off the ground causing the operator to be crushed between his control panel and the tractor's rollbar.

The plaintiff contended, *inter alia*, that the defendant was negligent in the design and manufacture of the product in that there was no adequate restraint to prevent the uplift of the backhoe; that, when a rollbar was attached to the tractor, an uplift of the backhoe off the ground would cause one in the operator's seat to be crushed against the rollbar; and that there was no warning against use of the backhoe with a tractor so equipped.

The defendant contended, *inter alia*, that the control lever of the tractor hitch had improperly been placed in an "up" position, thereby raising the backhoe into the rollbar. Plaintiff introduced expert testimony indicating the expected use of the backhoe in a digging operation would cause the back of the device, where the operator sat, to rear up. Thus was issue drawn, and the parties were without eyewitnesses.

### I. *Gamesmanship and Discovery.*

During the course of discovery, plaintiff, by interrogatory, sought the following information from the defendant:

#### XXII

If you have knowledge of any accident, incidents, or occurrences resulting in the bodily injury or death of an operator of a backhoe of similar model to the one in this suit, please state:

(a) The number of such accidents, incidents or occurrences of which you have knowledge;

(b) The approximate dates of each such accident, incident or occurrence;

(c) The name and address of each person injured;

(d) A brief description of each accident, incident or occurrence, including specifically, how each injury or death was sustained;

(e) Whether suit was filed against you, and if so, the Court in which each suit was filed, and the date of its filing, and the disposition of each such suit.

The defendant responded as follows:

Without, in any manner, waiving its objections as to relevance, materiality and reasonable calculation to lead to the discovery of admissible evidence, and in the spirit of cooperation the defendant and third-party plaintiff responds to said interrogatory by stating that it has no present knowledge of any accidents, injuries or death resulting from the operation of the particular backhoe model in question *prior to the incident which forms the subject matter of this litigation.* (emphasis added).

Later, while taking the deposition of the defendant's design engineer, Max Saunders, the plaintiff discovered that there had been at least two such accidents subsequent to the death of plaintiff's son. However, acting upon advice of counsel, the agents of defendant, including the deposition witness, refused to reveal the details of these subsequent accidents.

The plaintiff, pursuant to Rule 37(a), Fed. R.Civ.P., moved the Court to compel the defendant to provide the information sought by the interrogatory. The Court without stating its reasons denied the plaintiff's motion.

On appeal, the plaintiff argues that the denial of the motion to compel was reversible error. We agree.

 In our analysis, we start with the proposition that discovery ". . . together with pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). As the Supreme Court stated in the landmark decision of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947),

The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. Under the prior federal practice, the pre-trial functions of notice-giving, issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. Inquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method. The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

329 U.S. at 500–501, 67 S.Ct. at 388–389.

\* \* \* \* \* \*

We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. (footnotes omitted)

329 U.S. at 507, 67 S.Ct. at 392.

Rule 33 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. Likewise, Rule 37(a)(3), Fed. R.Civ.P., provides that, "an evasive or incomplete answer is to be treated as a failure to answer."

 Discovery by interrogatory requires candor in responding. This is not to say that a party must answer every interrogatory put by his adversary. Indeed, the development of the multiple, memory, typewriter has produced "boiler plate" interrogatories often devised for such multiple issues that the propriety of any one question vis-a-vis the case at issue is chancy at best. The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. A partial answer by a party

reserving an undisclosed objection to answering fully is not candid. It is evasive.

 In the instant case, it is easily seen that the response to the plaintiff's interrogatory was evasive as well as incomplete. Counsel for defendant did not object to the interrogatory.[1] Rule 33 requires that the particular interrogatory be fully answered by the party or that objection to it and the grounds of objection be stated. A unilateral declaration that no objections are waived will not be allowed to displace the command of Rule 33 that the party either answer fully or object. Defendant did neither.

Therefore the trial judge erred in refusing to compel the defendant to answer the interrogatory. By failing to object, defendant waived any objections it might have had to the giving of a full answer to the interrogatory. Likewise, since an evasive or incomplete answer is equated with failure to answer, the defendant did, under the law, fail to answer, thus waiving any objections to the interrogatory.

There is an additional reason why the trial court should have compelled the defendant to answer that part of the interrogatory evaded.

Rule 26(b)(1) states the general rule with regard to the scope of discovery.

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The information sought by the plaintiff as to the existence and details of other injuries and deaths resulting from the use of Long backhoes of the 1200 model and other similar models clearly was "reasonably calculated to lead to the discovery of admissible evidence." While an accident occurring after the one under investigation might not have been relevant to show defendant's prior knowledge or notice of a product defect, it may have been highly relevant to causation, the critical issue in this case. Indeed, this Court has held that when causation is an issue, provided a proper foundation has been laid, evidence of subsequent accidents may be admissible to prove causation and to rebut the opposing party's causation theory. *Bailey v. Kawasaki-Kisen, K. K.*, 455 F.2d 392 (5th Cir. 1972). Thus, the information sought by the interrogatory may well have constituted admissible evidence. Upon retrial, we leave it to the trial court to make this determination. Since the evidence of subsequent accidents may have been admissible, *a fortiori* the information sought by the interrogatory was "reasonably calculated to lead to the discovery of admissible evidence." The events in this trial fully disclose how such an occurrence may have led to the discovery of admissible evidence. Plaintiff's expert witness sought to reproduce the physical events causing the backhoe to raise up from the ground. The mere fact that his observations came from manipulation of the equipment *subsequent to* the incident investigated did not serve to make them objectionable. If there were (and the record indicates that there were) other occasions upon which the movement had taken place, observations made then might well have established the proof of what happened on the unobserved occasion at issue here.

The trial court erred in protecting defendant from making full answer to the interrogatory. No one objected to it. It was reasonably calculated to lead to the discovery of relevant facts.

---

1. An objection would have revealed that the answer given was evasive.

■ We are mindful that the scope of discovery lies within the sound discretion of the trial court. *Burns v. Thiokol Chemical Corporation*, 483 F.2d 300 (5th Cir. 1973). However, in his order denying plaintiff's motion to compel, the trial judge declined to state any reasons for his order limiting the scope of discovery. We have found no sound reason for the denial of plaintiff's motion to compel. We thus hold that the trial judge abused his discretion in denying plaintiff's motion to compel.

## II. *Insulation from Impeachment.*

In plaintiff's second enumeration of error, it is contended that the trial judge improperly limited the plaintiff from impeaching the testimony of defendant's expert witness, Max Saunders. We agree.

Witness Saunders was the design engineer of defendant. During discovery efforts, plaintiff learned of a letter, sent to all Long backhoe dealers by the same Mr. Saunders, warning them about the death dealing propensities of the Long backhoe when used in the fashion employed here. Prior to trial, the defendant filed a motion *in limine* seeking, *inter alia*, an order preventing counsel for plaintiff and the third-party defendant, Nichols Tractor Company, Inc., from mentioning or otherwise alluding to "any warning issued in respect of the subject or similar backhoes as to danger connected with the operation thereof after decedent's death." The Court in chambers orally sustained defendant's motion.

At trial, Mr. Saunders testified that it was his opinion that the backhoe was safe to operate while affixed to a rollbar-equipped tractor. Plaintiff and third-party defendant, out of the jury's presence, again objected to the Court's ruling foreclosing any reference to the warning bulletin which stated in part that, "[i]t has been determined that a backhoe operator can be crushed to death against the rollbar or safety cab where the backhoe is not rigidly mounted . . . ." Plaintiff and third-party defendant asserted that Saunders' testimony, occurring after the *in limine* ruling, had made his warning material for impeachment. The trial court would not allow reference to the warning letter.

From the transcript, it appears that the trial judge excluded reference to the warning letter because of the public policy considerations underlying the "repair doctrine." The exclusion is said to rest on the "social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety" and "that the subsequent remedial measure is not in fact an admission of fault, since the conduct is equally consistent with injury by mere accident or through contributory negligence." Notes of the Advisory Committee on Rule 407, Fed.R.Evid. However, it is also apparent that the trial court overlooked the exceptions to that rule. Rule 407 of the Federal Rules of Evidence states as follows:

> When after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

■ In this case, the plaintiff sought to use the warning letter for impeachment purposes. While we are aware that Rule 403 authorizes the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, we do not think this situation called for its application. In the face of Saunders' testimony as to his present opinion of the safety of the backhoe when attached to a rollbar-equipped tractor, we do not think *unfair* prejudice to the defendant would have resulted from his having been confronted by his own letter warning of exposure to death by such use. Of course, "unfair prejudice" as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."

## III. *Release or Covenant not to Sue?*

In his third enumeration of error, plaintiff argues that the trial court erred by submitting to the jury, as evidence of a release, an agreement entered into between the plaintiff, on the one hand, and Nichols Tractor Co. (the tractor dealer), John Deere Tractor Co. (the manufacturer of the tractor), and John Deere Insurance Co. (the insurance carrier for the dealer and manufacturer).

Prior to the trial, an agreement was negotiated whereby, in exchange for a $40,000 loan without interest, repayable by specified formula only upon recovery against the defendant, plaintiff agreed "to forbear to sue Nichols, John Deere and the Insurance Company to forever save Nichols, John Deere and the Insurance Company harmless as hereafter provided." Other relevant sections of the agreement provided as follows:

6.

While the $40,000 referred to herein is a loan to be repaid only from proceeds that may be recovered by Mr. and Mrs. Dollar in subsequent litigation against Long Manufacturing Co., Inc., it is the intent of the parties that Nichols, John Deere and the Insurance Company nor any person, firm or corporation acting on behalf of Nichols, John Deere and the Insurance Company and no person, firm or corporation for whose actions Nichols, John Deere and the Insurance Company might be responsible, shall ever again be called upon to respond in damages as a result of the accident or occurrence hereinabove referred to and in which Mr. and Mrs. Dollar's son was fatally injured. In consideration of the loan without interest as herein referred to, Mr. and Mrs. Dollar agree if necessary to protect such persons intended to be protected hereby from further liability, that Mr. and Mrs. Dollar will promptly execute a full and complete release or enter a complete satisfaction of any judgment, execution of fi. fa. without payment from any source whatever. Further, when the litigation hereinbefore referred to with Long Manufacturing Co., Inc. is concluded either in the form of settlement on a release given by Mr. and Mrs. Dollar, or at the rendition of a final judgment therein, or in any other fashion or manner whatever, Mr. and Mrs. Dollar agree to execute a full and complete release in favor of all parties making this loan possible and for all other persons for whose actions said parties may be liable.

7.

It is not the intent of this agreement that the same be a release.

Accordingly, a check for $40,000 was issued by John Deere Insurance Co. to the plaintiff and her counsel. On the back of the check appeared the following language:

Endorsement hereof acknowledges that this payment is offered and received in full satisfaction of the claim(s) identified on the other side; and that upon acceptance and payment of this draft the John Deere Insurance Company is hereby released and discharged of said claims.

■ Under Georgia law, the release of a joint tortfeasor operates to release all other joint tortfeasors. *Knight v. Lowery*, 228 Ga. 452, 185 S.E.2d 915 (1971).

The defendant at trial was successful in persuading the trial judge to admit the loan agreement and check into evidence so that the jury could decide whether or not the plaintiff had released a joint tortfeasor and hence the defendant.

The plaintiff contends that the trial court erred, asserting that, as a matter of law, there was no release of a joint tortfeasor, only a covenant not to sue. We agree.

At the outset, we examine the loan agreement. Clearly it is not a release, but rather, a covenant not to sue with related indemnity provisions. It expressly states that the intention of the parties is that it not constitute a release. Furthermore, the section provided for the plaintiff to release the parties to the agreement in the event it became necessary clearly is in contemplation of conditional future action and hence belies the assertion that the agreement is a release.

■ Likewise, the acceptance of the check by the plaintiff did not operate to release any joint tortfeasor from liability.

By its express terms, the release language on the back of the check purported to release only John Deere Insurance Company from the claim identified on the front of the check. The insurance company, whose liability to the plaintiff rested solely upon its contractual undertakings in the agreement, can hardly be contended to be a joint tortfeasor. The claim referred to on the face of the check was the claim created by contract between plaintiff, Nichols, John Deere and the Insurance Company when they entered into their loan agreement and covenant not to sue. It was not any claim plaintiff might have arising out of the addition of the rollbar to the tractor or other such possible claim in connection thereof. Thus, the trial judge erred in two respects. In admitting the documents into evidence for the jury's consideration, he erred since the issue of the interpretation of a contract is one for the Court, not the jury. Ga.Code Ann. § 20–701. Secondly, the Court should have held as a matter of law that the documents did not constitute a release of a joint tortfeasor.

The plaintiff submits additional grounds alleged to constitute reversible error. We need not pass on these. A discussion of them would not aid the District Court in the event of retrial.

REVERSED and REMANDED.