**BORDEN, INC., Plaintiff-Appellant, Cross-Appellee,**

**and**

**Aetna Casualty & Surety Company, Plaintiff-Cross-Appellee,**

**v.**

**FLORIDA EAST COAST RAILWAY COMPANY, John Spak & William O. Harrison, Defendants-Appellees,**

**and**

**Matthew W. Frost, Marcus W. Frost, and Jane W. Frost, Defendants-Appellees, Cross-Appellants.**

**No. 84-3165.**

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1985.

Christopher C. Skambis, Orlando, Fla., for plaintiff-appellant, cross-appellee.

J.W. Prichard, Jacksonville, Fla., F.E.C. R.C.

Terrence L. LaBelle, Ft. Lauderdale, Fla., for Frosts.

Adolfo del Castillo, Miami, Fla., for Aetna Cas. & Sur. Co.

Before VANCE and ANDERSON, Circuit Judges, and HENLEY *, Senior Circuit Judge.

VANCE, Circuit Judge:

On February 12, 1979, a southbound Florida East Coast ("FEC") freight train derailed and ran into an ice cream freezer/warehouse owned by Borden, causing extensive damage. The train derailed because John Spak, William Harrison and Matthew Frost tampered with the track's switching and signalling systems and caused the train to be shunted without warning from the main track onto a short spur track. The train ran off the spur track, across a road, over an adjacent lot, and into the warehouse. Borden and Aetna[1] filed suit against FEC, Spak, Harrison, and Frost. Frost's parents were also named as defendants pursuant to Fla.Stat. § 741.24 because Frost was a minor when the accident occurred.

Borden and Aetna alleged that FEC had acted negligently by maintaining switching and signalling systems which it knew were particularly vulnerable to the type of vandalism which led to this accident. The complaint also contained a punitive damages claim against FEC alleging that the railroad's continued use of its switching and signalling systems despite prior acts of vandalism was wanton and willful and done with reckless disregard for the safety of others.[2] In addition, the complaint contained negligence and intentional tort claims against Spak, Harrison and Matthew Frost, and a statutory claim against Frost's parents, Jane and Marcus Frost.

The signalling system employed by FEC at the time of the accident is commonly known as the "block" signal system. At the beginning of each "block" of track there is a signalling device like a traffic light which displays three different colors or "aspects." Green means that the block is clear and that the train may proceed at its maximum permitted speed. Red is the most restrictive aspect and means that a train should immediately slow to fifteen miles per hour or come to a complete stop. Two types of track circuits can be used to accomplish the changes in the aspects—the shunt circuit or the shunt and break circuit. At the time of the accident, FEC was using the shunt circuit device on the switching and signalling devices in question.

Under normal circumstances, a shunt circuit will cause a block signalling device to display a red aspect when a switch is thrown into the reverse position. If the two wires nearest the switch are cut after the switch is put in the reverse position, however, the block signalling device will display a green aspect, called a "false proceed." The false proceed indicates that the track is clear even though it may not be. In the February 12, 1979 incident Spak, Harrison and Matthew Frost cut the two wires nearest the switch after placing the switch in the reverse position, causing a false proceed signal to be displayed on the spur track. Because the block signal was green, the train did not attempt to slow down until the conductor realized the train had been shunted onto a short spur track. By then, it was too late to stop.

Borden introduced evidence at trial which suggested that the shunt and break circuit is safer because if the two wires nearest the switch are cut after the switch is put in the reverse position, the block signalling device automatically displays a red aspect. Borden contended that if FEC had been

---

* Honorable J. Smith Henley, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

1. Aetna's claim in this litigation arises from its status as the subrogee of its insured, John Eldrige, whose property was also damaged in the accident. Attorneys for Aetna and Borden worked out an agreement whereby Borden agreed to file a complaint on behalf of both parties and to bear the responsibility of presenting the liability issue at trial for both parties.

2. The punitive damages claim was added in an amended complaint and was entitled "Count V—Claim by Borden Against Florida East Coast Railway Company for Punitive Damages." At trial, Aetna was allowed to amend the complaint to include a punitive damages claim on its behalf against FEC.

using this type of circuit on February 12, 1979, the accident would not have occurred because the block signalling device would have displayed a red aspect and the train would have been alerted to slow down or stop. Borden also introduced evidence which showed that the FEC was using the shunt and break circuit on some of its switching and signalling devices on other tracks at the time of the accident.

At trial, the plaintiffs also attempted to show that FEC was negligent because FEC knew its switching and signalling systems were susceptible to the type of vandalism involved in this case. As proof that FEC could have foreseen that the system would be vandalized in this way, Borden attempted on four separate occasions during the trial to introduce evidence of a similar occurrence which took place on August 31, 1978, on the same track at a switch six-tenths of a mile away. The train involved in the August 31, 1978 incident did not derail because it was travelling in the opposite direction from the way the tracks had been switched. The trial court refused to admit the evidence on all four occasions.

The jury found no negligence on the part of FEC, but returned a verdict against Spak, Harrison, and Matthew, Jane and Marcus Frost. On the special verdict form, the jury found Spak eighty percent responsible for the accident, Harrison ten percent responsible and Matthew Frost ten percent responsible. The jury set Borden's damages at $217,141.00 and Aetna's damages at $27,209.66.

In entering the final judgments, the district court apportioned the damages in accordance with the percentages of fault attributed to each of the defendants by the jury. This resulted in judgments against each of the defendants as follows: Spak to Borden for $173,712.80 and to Aetna for $21,767.73; Harrison to Borden for $21,-714.10 and to Aetna for $2,727.97; and

Matthew, Jane and Marcus Frost to Borden for $21,714.10 and to Aetna for $2,727.97.

On appeal, Borden alleges that the district court erred in refusing to allow it to introduce evidence of the prior similar incident on August 31, 1978; in denying its motion to compel as to certain of its requests for production; and in apportioning the damages in the final judgments in accordance with jury's apportionment of fault. On cross-appeal, Matthew, Jane and Marcus Frost allege that the trial court erred in allowing Aetna to amend its complaint at the close of the trial to conform with the evidence. Marcus and Jane Frost also contend the district court erred in entering judgments against them in excess of $2500.[3] Aetna failed to perfect a timely notice of appeal and is before this court as a cross-appellee only.

■ The parties agree that one of the issues on Borden's appeal and one of the issues on the Frosts' cross-appeal can be disposed of summarily. First, it was plain error for the trial judge to apportion the damages according to the jury's assessment of the percentage of fault attributable to each defendant. Under Florida law, joint tortfeasors are jointly and severally liable for all damages recoverable by the plaintiff. *See, e.g., Lincenberg v. Issen,* 318 So.2d 386 (Fla.1975); *Moore v. St. Cloud Utilities,* 337 So.2d 982, 984 (Fla. Dist.Ct.App.), *cert. denied,* 337 So.2d 809 (1976). *See also* Fla.Stat. § 768.31. On remand, the trial court should enter judgments against Spak, Harrison, and Matthew Frost making each jointly and severally liable for the entire amount of damages recoverable by Borden.

■ The parties also agree that the district court erred in entering judgments against Jane and Marcus Frost in excess of $2500. Their liability arises pursuant to Florida statute section 741.24. The statute

---

**3.** In addition, Marcus and Jane Frost appeal from the trial court's denial of their motion for a directed verdict at the close of the plaintiff's evidence. Jane Frost also appeals from the denial of her renewed motion for a directed verdict made at the close of trial. We find these contentions frivolous and without merit because of the stipulation entered into by the parties at trial concerning the requirements of Fla.Stat. § 741.24. We therefore affirm the judgment against Marcus and Jane Frost except as to amount.

allows a party whose property is maliciously or willfully destroyed by a minor to recover damages not in excess of $2500 from the minor's parents, provided certain conditions are met.[4] The parties stipulated prior to trial that Jane and Marcus Frost's maximum potential liability was $2500 to each plaintiff. The district court erroneously entered judgments against Jane and Marcus Frost in excess of this amount. On remand, the district court should revise the judgments so that Jane and Marcus Frost's maximum liability to each plaintiff is $2500, plus taxable court costs and interest, computed from the date of the previous judgment.

The primary issue presented by Borden on appeal is whether the district court erred in refusing to allow Borden to introduce evidence of the August 31, 1978 vandalism incident which occurred on the same railroad line at a switch six-tenths of a mile away from the switch involved in this accident. Borden sought to introduce the evidence to show that FEC was aware of the switching and signalling systems' vulnerability to vandalism and therefore in a position to foresee the occurrence of an accident if appropriate measures were not taken. FEC objected and offered two reasons for excluding the evidence. First, FEC argued that the two incidents were not similar enough to warrant admission of the August 31, 1978 incident as a prior similar occurrence. The railroad stressed that the incidents involved different switches at different locations, occurred almost six months apart and had dissimilar results. Second, FEC argued that because the van-

dals involved and the circumstances surrounding the August 31, 1978 incident were unknown, admission of the evidence would be unduly prejudicial because FEC would not be able to distinguish the two events. The trial judge sustained FEC's objection, apparently finding that Borden had failed to show sufficient factual similarities between the two incidents to warrant the evidence's admission.[5]

■ Although this is a diversity of citizenship case in which Florida law provides the substantive law, the admissibility of evidence in federal courts is governed by federal law. *See, e.g., Garcia v. Aetna Casualty and Surety Co.,* 657 F.2d 652, 654 (5th Cir. Unit B 1981). A trial judge has broad discretion over the admission of evidence. That discretion, however, does not allow the exclusion of competent evidence without a sound, practical reason. *See Ramos v. Liberty Mutual Insurance Co.,* 615 F.2d 334, 340 (5th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981); *Bailey v. Kawasaki-Kisen, K.K.,* 455 F.2d 392, 398 (5th Cir. 1972). Evidence of similar occurrences may be offered to show a defendant's notice of a particular defect or danger, the magnitude of the defect or danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the strength of a product, the standard of care, and causation. *See, e.g., Ramos,* 615 F.2d at 338–39; *Dollar v. Long Manufacturing, N.C., Inc.,* 561 F.2d 613, 617 (5th Cir.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85

**4.** Specifically, section 741.24 provides:

(1) Any municipal corporation, county, school district, or department of Florida; any person, partnership, corporation, or association; or any religious organization, whether incorporated or unincorporated, shall be entitled to recover damages in an appropriate action at law in an amount not to exceed $2,500, in a court of competent jurisdiction, from the parents of any minor under the age of 18 years, living with the parents, who shall maliciously or willfully destroy or steal property, real, personal, or mixed, belonging to such municipal corporation, county, school district, department of the state, person, part-

nership, corporation, association, or religious organization.

(2) The recovery shall be limited to the actual damages in an amount not to exceed $2,500, in addition to taxable court costs.

**5.** After hearing arguments from the parties the first time Borden attempted to introduce the evidence, the trial court ruled:

Different location, different direction.
Objection is sustained.

When Borden later attempted to introduce the evidence of the August 31, 1978 incident, the court sustained FEC's objections without comment.

(1978). In this case Borden offered the evidence of the prior similar occurrence to show that FEC was aware that the switching and signalling systems were particularly susceptible to this type of vandalism and was therefore in a position to foresee that this kind of accident could occur. This is a permissible use of evidence of a prior similar occurrence.

This court has developed principles which govern the admissibility of prior similar incidents:

Whether a reasonable inference may be drawn as to the harmful tendency or capacity of [a product] from prior failures depends upon whether the conditions operating to produce the prior failures were substantially similar to the occurrence in question. The requirement that the prior accident not have occurred at too remote a time is a special qualification of the rule requiring similarity of conditions. The admission of such evidence is also subject to the reasonable discretion of the trial court as to whether the defendant is taken by unfair surprise and as to whether the prejudice or confusion of issues which may probably result from such admission is disproportionate to the value of such evidence.

*Jones & Laughlin Steel Corp. v. Matherne*, 348 F.2d 394, 400 (5th Cir.1965) (footnotes omitted). After examining the proffered evidence under the applicable standards, we conclude that the trial judge's refusal to admit the evidence requires reversal.

The evidence of the August 31, 1978 incident was clearly relevant to show that the February 12, 1979 vandalism incident was foreseeable. Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Whether FEC could have foreseen an act of vandalism of this type was certainly an issue of consequence to the determination of this negligence action. In its answer to the com-

plaint, FEC expressly asserted as a defense that the acts of the individual defendants and the results of those acts were unforeseeable. This issue was contested throughout the trial and counsel for FEC felt it so important that in closing argument he specifically argued:

You notice there is not a shred of evidence, shred of evidence that before February the 12th or the night of the 11th, 1979, not a shred of evidence has come in here that anybody else other than employees making mistakes, that anybody else ever come [sic] out and cut shunt wires to a switch. Not a shred.

Evidence of the August 31, 1978 incident would obviously have made FEC's ability to foresee such an incident more probable than it appeared without the evidence.

The question then is whether the conditions surrounding the August 31, 1978 vandalism incident were substantially similar to the conditions surrounding the February 12, 1979 incident. *See Ramos*, 615 F.2d at 339; *Jones & Laughlin Steel Corp.*, 348 F.2d at 400. The conditions surrounding the two incidents were similar enough to allow the jury to draw a reasonable inference concerning FEC's ability to foresee this type of vandalism and its results. The procedure used to reverse the track switch and disable the signalling system was identical in both incidents. In each case the vandals removed the lock from the switch box, threw the switch, then cut the wires to the signalling system. The incidents involved identical FEC siding switches located on the same track just six-tenths of a mile from one another. Although the results of the two incidents were dissimilar, this difference is insubstantial in considering the issue of the foreseeability of this type of vandalism.

We also conclude that the prior incident was not too remote in time from the February 12, 1979 derailment. Only five and one-half months separated the two incidents. In the past, we have approved the admission of evidence of prior occurrences that took place two years prior to the inci-

dent which was the subject of the litigation. *See Ramos,* 615 F.2d at 337–40.

■■■ Finally, we conclude that the probative value of the evidence of the August 31, 1978 incident would not have been outweighed by the possibility of unfair prejudice to FEC. *See id.* at 340. *See also* Fed.R.Evid. 403. The trial judge is accorded broad discretion in determining whether evidence should be excluded under Rule 403 and we will only reverse when there has been a clear abuse of discretion. *See Stallworth v. Illinois Central Gulf Railroad,* 690 F.2d 858, 868–69 (11th Cir.1982). Without question, admission of the evidence would have been adverse to FEC, but unfair prejudice as used in Rule 403 cannot be equated with evidence that is simply adverse to the opposing party. *See Dollar,* 561 F.2d at 618. We do not see how any prejudice to FEC resulting from the admission of evidence of the August 31, 1978 incident would have been "unfair." FEC argues that since it does not know the identities of the vandals in the August 31, 1978 incident, the evidence would be unduly prejudicial because it would be unable to distinguish the two incidents. We find this contention untenable because we fail to see how FEC's lack of knowledge concerning the perpetrator's identities has any impact on its ability to foresee that the switching and signalling systems could be vandalized in this particular manner.

■■■ In addition to finding that FEC would not have been prejudiced by admitting the evidence, we also find that the trial court's failure to admit the evidence substantially prejudiced the rights of Borden because it resulted in the exclusion of evidence that was essential to its case. *See Bailey,* 455 F.2d at 398. The essential nature of this evidence is best illustrated by FEC's closing argument which emphasized that no evidence had been introduced indicating that this type of vandalism had ever occurred before. As the eighth circuit recently recognized in *Anderson v. Malloy,* 700 F.2d 1208, 1214 (8th Cir.1983), a litigant is unduly prejudiced when his opponent is successful in preventing the admission of evidence on a particularly crucial issue in dispute, and then points to the absence of such evidence in closing argument.

The trial judge's refusal to admit the evidence regarding the August 31, 1978 vandalism incident was a clear abuse of discretion and requires us to remand for a new trial as to Borden's negligence claim against FEC.

Borden also contends that the district court erred in adopting the magistrate's order which granted in part and denied in part Borden's motion to compel FEC's response to certain requests for production. After receiving certain documents pursuant to a Freedom of Information Act request, Borden concluded that FEC had not fully cooperated with prior discovery requests. In response, Borden served a comprehensive set of requests for production on FEC which, in Borden's own words, was designed to "obtain every document which could conceivably be relevant to the issues in this case." FEC objected to certain of these requests on the grounds that they were overly broad, sought irrelevant information, were designed to harass, and sought privileged information. Borden's motion was considered by a magistrate. The magistrate granted the motion to compel as to certain of Borden's requests. He denied it as to certain other requests on the grounds that those requests were overly broad because they failed to describe the documents sought with reasonable particularity and they encompassed many documents which were of no relevance to the case, and because certain of the requests sought privileged information. Borden filed a motion with the district court seeking review of the magistrate's order. The district court affirmed the magistrate's discovery order stating that "after careful review" of the plaintiff's motion to review and memorandum in support thereof the court was "satisfied that the Magistrate did not err."

■■■ District courts have great discretion over discovery matters and this court will not reverse a discovery ruling absent a

finding of an abuse of discretion to the prejudice of a party. *See Commercial Union Insurance Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir.1984); *Hastings v. North East Independent School District*, 615 F.2d 628, 631 (5th Cir.1980). At oral argument, counsel for Borden conceded that it did not know and could not prove that it had been prejudiced by the denial of the motion to compel. After reviewing the requests for production, the motion to compel, and the magistrate's order, we are unable to ascertain how Borden could have been prejudiced by the district court's affirmance of the magistrate's decision. Those requests the magistrate denied were overly broad for the reasons stated in the magistrate's order. Further, the magistrate's order allowed meaningful discovery by granting the motion to compel as to those requests which were properly phrased and limited to the issues relevant to the case. We therefore find no error in the district court's adoption of the magistrate's order on Borden's motion to compel.

On cross-appeal, Matthew, Jane and Marcus Frost allege that the district court erred in allowing Aetna to amend its complaint at the close of trial to conform to the evidence. Their objection to the amendment stemmed from their alleged understanding throughout the litigation that Aetna was not suing them in this particular lawsuit. As support, the Frosts point out that prior to the filing of this suit, Aetna had filed suit against them in Florida state court. That case was still pending when this case was tried. Further, the original complaint in this case listed four separate causes of action against the various defendants. Count I was entitled "Action by Borden and Aetna Against FEC for Negligence." Counts II and III were entitled "Action by Borden Against Spak, Harrison and Frost for Negligence," and "Claim by Borden Against Spak, Harrison and Frost for Intentional Tort." Count IV was entitled "Claim by Borden Against Marcus W. Frost and Jane W. Frost for Statutory Violation."[6] The Frosts assert that because

Aetna had already filed suit against them in state court and because Aetna was not specifically named as a plaintiff in each of the counts against them, they assumed throughout the litigation that they were not defending against Aetna. They contend that allowing the amendment was unduly prejudicial and improper because they had not defended against Aetna's claims or damages throughout the litigation.

Aetna responds by pointing out that it was named as a plaintiff against all the defendants in the style of the case and in the complaint's introductory paragraph. The introductory paragraph provides:

> Plaintiffs Borden, Inc. and Aetna Casualty & Surety Company sue defendants Florida East Coast Railway Company, John Spak, William O. Harrison, Matthew W. Frost, Marcus W. Frost and Jane W. Frost alleging: ....

Aetna argues that this was sufficient to put the Frosts on notice that Aetna was pursuing this action against them. Aetna also points out that it had previously filed suit against all parties in state court and that the issues litigated in this case are identical to the issues that would be litigated in state court.

There is a strong policy embodied in the Federal Rules of Civil Procedure, and Rule 15 particularly, favoring the liberality of amendment. *See Wallin v. Fuller*, 476 F.2d 1204, 1209 (5th Cir.1973); *United States v. Stephen Brothers Line*, 384 F.2d 118, 124–25 (5th Cir.1967). Rule 15(b) of the Federal Rules of Civil Procedure states in part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend

---

6. As stated earlier, an amended complaint later added a fifth claim; however, that claim was against the FEC only and did not involve the Frosts. *See supra* note 2.

does not affect the result of the trial of these issues.

Allowing an amendment to the pleadings at the close of trial to conform to the evidence presented is within the trial court's discretion. *See, e.g., Save Lake Washington v. Frank,* 641 F.2d 1330, 1340 (9th Cir.1981); *Fisher v. Indiana Lumbermens Mutual Insurance Co.,* 456 F.2d 1396, 1398–99 (5th Cir.1972). When issues outside the pleadings are tried by the express or implied consent of the parties, however, Rule 15(b) requires that the amendment be allowed. *Wallin,* 476 F.2d at 1210. Aetna's amendment, therefore, had to be allowed if the parties either impliedly or expressly consented to the trial of the Frosts' liability to Aetna.

 The Frosts' objection to the amendment at the close of trial and their appeal indicates that they did not expressly consent to the trial of these issues. We therefore must examine the record to see if they gave their implicit consent by actually contesting Aetna's claim during the litigation.[7] Aetna allowed Borden to control completely the presentation of the liability evidence. This was permissible because the evidence as to liability was identical for both plaintiffs. The Frosts had every opportunity to attack Borden's presentation of the liability evidence. Because the evidence was identical as to both Borden and Aetna, the Frosts could not have been prejudiced in any way in presenting their defense to liability even if they were unaware that Aetna was proceeding against them. After Borden had presented its damages evidence, Aetna presented its damages evidence. Aetna's evidence consisted of the reading of two depositions and the introduction of seven exhibits. Mr. LaBelle, counsel for the Frosts, was given the opportunity to object but stated he had "[n]o objection" to the introduction of Aetna's exhibits. His failure to object, however, is not dispositive of the issue of whether the Frosts actually contested Aetna's damages claim. The depositions and exhibits offered by Aetna

as proof of its damages are not in the record before us. We are thus unable to ascertain whether counsel for the Frosts was present at these depositions and exercised the opportunity to cross-examine and attack Aetna's damages evidence.

Rule 10(b)(2) of the Federal Rules of Appellate Procedure provides that:

> If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, he shall include in the record a transcript of all evidence relevant to such finding or conclusion.

Because the Frosts have failed to provide us with all the evidence the trial court had before it when ruling on Aetna's motion to amend, we are unable to determine whether or not the Frosts actually contested Aetna's claim and whether they were prejudiced by the amendment. We therefore must affirm the trial court's decision to allow the amendment.

To summarize: (1) We reverse the judgment in favor of F.E.C. on Borden's claim and remand for a new trial; (2) we vacate the judgments in favor of Borden and against John Spak, William Harrison and Matthew Frost and remand for entry of judgment in Borden's favor and against those defendants jointly and severally for $217,141.00, the entire amount of Borden's damages, together with interest from the date of the original judgment and costs; (3) we vacate the judgments against Jane and Marcus Frost and remand for entry of judgments not to exceed $2500 in favor of Borden and $2500 in favor of Aetna, together with costs and interest from the date of the original judgment; (4) we affirm the district court's decision to permit Aetna to amend its complaint at the close of trial to conform to the evidence.

AFFIRMED in part, REVERSED and REMANDED in part, VACATED and REMANDED in part, with instructions.

---

7. We agree with the Frosts' contention that the trial court should not have allowed the amendment if, in fact, the Frosts had failed to expressly or impliedly contest Aetna's claim.